UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

NAYDA LOPEZ and
BENJAMIN LOPEZ,

      Plaintiffs,

v.

PLATINUM HOME MORTGAGE CORP.,

      Defendant.

_____/

Case No. 1:05-CV-408

Hon. Richard Alan Enslen

**OPINION**

Lender, Defendant Platinum Home Mortgage Corporation, seeks summary judgment against borrowers, Plaintiffs Nayda and Benjamin Lopez, regarding federal and state statutory and common law claims regulating loan transactions. The Motion for Summary Judgment has been fully briefed and oral argument is unnecessary in light of the briefing. For the reasons which follow, summary judgment will be granted to the lender regarding all federal law claims and the state law claims will be dismissed without prejudice.

**FACTUAL BACKGROUND**

In February 2005, borrowers came to lender's office to seek a mortgage refinancing loan. (Compl. ¶ 6.) Borrowers received two "good faith estimates" regarding settlement charges for two potential loan transactions–one involving an $84,000 loan amount and the second involving a $94,000 loan amount. (Compl., Exs. 1 & 2.) The potential loans both involved interest rates at 6.25 percent, but the second loan also included a cash payout of $10,000 to the borrowers. (*Id.*; Pls.' Decl. ¶ 6.) On February 16, 2005, borrowers applied for the second loan. (Pls.' Br. in Opp., Ex. 3.)

This loan application was premised upon an understanding that borrowers' home had a fair market value of $120,000. Lender, upon receipt of the Application, sought an appraisal of the home's value. The value was appraised at $114,000 based on sale prices of comparable homes. (Def.'s Mot. for Summ. J., Ex. E.) Because of the appraised value, borrowers did not qualify for the loan which was the subject of the February 16, 2005 application because mortgage insurance was required by the lender for all refinancing wherein more than 80 percent of the home's value was loaned. (Vanderveen Dep. 9.) The written appraisal was dated on February 22, 2005. (*See* Def.'s Mot. for Summ. J., Ex. E.) Nevertheless, it appears that informal notice of the appraisal was provided to the lender prior to February 22, 2005, because on February 18, 2005, the lender made lending "Findings" utilizing the $114,000 appraisal amount. (*Id.*, Ex. F.) As such, the Court will use February 18, 2005 as the date on which the loan application was "completed" within the meaning of 12 C.F.R. § 202.9(a).

What happened next, giving the borrowers the benefit of all disputed facts, is that borrowers were surprised when they appeared to close the loan on March 25, 2005.[1] (Pls.' Decl. ¶¶ 8-10.) Instead of being presented with the terms of the original loan application, they were presented with different terms–requiring payment of a 10.605 annual percentage rate (effective interest rate), higher monthly payments, and higher settlement costs. (*Id.*; Pls.' Resp., Ex.7.) The borrowers, nevertheless, closed the loan and failed to cancel the loan within the statutory three-day cancellation period, *see* Def.'s Mot. for Summ. J., Ex. G, but have sued the lender under both federal and state

---

[1]According to the lender, borrowers were informed of the appraisal and counteroffer orally during telephone conversations significantly before the March 25, 2005 closing. Given the dictates of Rule 56, though, the Court accepts the account of the borrowers, not the lender.

law for fraud and statutory non-disclosures. Borrowers' Complaint was filed on June 10, 2005. Lender filed its Motion for Summary Judgment in June 2006 and the briefing is now complete.

## **LEGAL STANDARDS**

This Motion is brought pursuant to Federal Rule of Civil Procedure 56. Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

In assessing evidence, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**LEGAL ANALYSIS**

Four counts are included within the Complaint: Count I, violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 *et seq.* (Compl ¶¶ 15-22); Count II, violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.* (Compl. ¶¶ 23-28); Count III, fraud and silent fraud (Compl. ¶¶ 29-34); and Count IV, violation of Michigan's Mortgage Brokers, Lenders and Servicers Licensing Act, Mich. Comp. Laws §§ 445.1651 *et seq.* (Compl. ¶¶ 35-38.[2]) The first two counts assert federal statutory claims. The latter counts assert state law claims. Plaintiffs have joined the state law claims on the theory of supplemental jurisdiction under 28 U.S.C. § 1367. (Comp. ¶ 2.)

**1. Federal Claims**

An analysis of the borrowers' federal claims begins with the terms of ECOA and the pertinent regulations. These borrowers' ECOA claims are premised on the assertion that the lender owed them an ECOA "notice of adverse action" when their original loan application was not approved on the terms for which they applied. (*See* Compl. ¶ 17.) The pertinent statutory subsection is 15 U.S.C. § 1691(d), which defines the term "adverse action" and requires a statement of reasons explaining an "adverse action." It reads as follows:

> **(1)** Within thirty days (or such longer reasonable time as specified in regulations of the Board for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.

---

[2]This is a corrected enumeration of the pertinent paragraphs. Those paragraphs were originally misnumbered in the Complaint as paragraphs 32-35 (even though preceded by paragraphs 32-34.)

>   **(2)** Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by--
>
>>   **(A)** providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or
>>
>>   **(B)** giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained.  Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

15 U.S.C. § 1691(d)(1)-(2).

This language is, nevertheless, subject to certain regulatory exceptions premised upon reasonable banking industry practices.  One such exception is the exception for counteroffers accepted by the borrower.  The lender has raised the counteroffer exception as the explanation for why there was no "adverse action" on the loan application.  Title 12 C.F.R. § 202.2 defines the term "adverse action" in pertinent part as follows:

>   (c) Adverse action--
>
>>   (1) The term means:
>>>   (i) A refusal to grant credit in substantially the amount or on substantially the terms requested in an application *unless the creditor makes a counteroffer (to grant credit in a different amount or on other terms) and the applicant uses or expressly accepts the credit offered;*

12 C.F.R. § 202.2(c)(1)(i) (emphasis added).  The theory of this regulatory exception is clear on its face.  Since the approval of counteroffers are controlled by the borrower, whose right it is after

required Truth-in-Lending Act and Regulation Z disclosures[3] to either accept or reject the counteroffer and keep or abandon a notification claim, the approval of the counteroffer should be construed as a waiver of any Regulation B/ECOA notification claim.[4]  In other words, the regulatory language does not intend that a borrower will both accept the benefit of the lending and simultaneously pursue an ECOA claim against a lender with whom the borrower has an ongoing contractual relationship.

It is acknowledged that *dicta* in such cases as *Ricciardi v. Ameriquest Mortg. Co.*, 164 Fed. Appx. 221, 224, 2006 WL 120234, **2 (3d Cir. 2006) and *Newton v. United Companies Fin. Corp.*, 24 F. Supp. 2d 444, 461-62 (E.D. Pa. 1998), authorities outside this Circuit, suggest that any delay in the notification of a counteroffer of more than 30 days constitutes a violation of ECOA.  This *dicta* is based not on the language of the statute, but on later regulatory language--12 C.F.R. § 202.9(a)(1).  The pertinent regulation provides that, "A creditor shall notify an applicant of action taken within: (i) 30 days after receiving a completed application concerning the creditor's approval of, *counteroffer to*, or adverse action on the application." *Id.* (emphasis added).  Plaintiffs reason that since they must receive notification of the counteroffer within 30 days of the completed application, this notification (which occurred more than 30 days after the application was completed) constituted a violation of ECOA regardless of whether the counteroffer was accepted.

---

[3]The Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, requires detailed disclosures about the terms of consumer lending, including the effective interest rate and other lending fees and charges.  Regulation Z is codified at 12 C.F.R. Part 226 and comprises a comprehensive set of regulations interpreting TILA.

[4]Regulation B refers to the set of regulations interpreting ECOA found at 12 C.F.R. Part 202.

These arguments are interesting because they essentially ask the Court to decide which of two regulatory provisions takes precedence, the adverse action definition or the timing requirement for counteroffers. The case law considered, unfortunately, fails to directly address this question. Nevertheless, the Court does believe that the adverse action definition should take precedence even when the counteroffer is both given and accepted more than 30 days after the completion of the loan application. This interpretation does not unduly impair the interests of borrowers because borrowers under the regulatory language are free to reject a counteroffer so as to preserve a suit for ECOA damages based on delayed notification. This interpretation does mean that there will be fewer delayed notification suits in the context of borrowers who accept counteroffer loan agreements, though this is far from an undesirable result since neither the courts nor society in general would profit much from lending arrangements in which lenders are active opponents in litigation. Furthermore, this interpretation will not encourage lenders to regularly notify consumers outside the 30-day period. When notification is delayed in violation of ECOA, bargaining power in the lending transaction shifts to the borrowers since, in this scenario, lenders are at their mercy to excuse a foregone violation. Borrowers should have the choice between the potentially beneficial lending terms and the election of ECOA remedies, but not both, given the regulatory definition of "an adverse action."[5]

As such, the Court finds that there was no "adverse action" under ECOA and that Defendant is entitled to summary judgment on such claim.

---

[5] Defendant also relies upon Plaintiffs' failure to plead a violation of 12 C.F.R. § 202.9(a)(1) as a theory of recovery in their Complaint. (*See* Compl. ¶¶ 23-28.)

Next for consideration is the borrowers' FCRA claims–which are premised on a claim that the lender took an "adverse action" within the meaning of 15 U.S.C. § 1681m by denying a favorable interest rate based upon a credit report. This claim fails for two reasons. First, the loan application made by the borrowers already assumed the consumer debt in question and thus the later denial was not premised on the consumer debt, but upon the appraised value of the home. (Juan Santos Dep. 44-45.) Second, FCRA adopts in pertinent part the ECOA definition of "adverse action" and thus adopts the ECOA exception for counteroffers accepted by the borrowers. *See* 15 U.S.C. § 1681a(k)(1)(A). It is true that the FCRA definition of "adverse action" is made broader by the inclusion of some specific examples of "adverse actions" applicable to credit reports and a general catchall provision for other actions "adverse to the interests of the consumer." *See* 15 U.S.C. § 1681a(k)(1)(B)(iv). Notwithstanding, the FCRA reference to ECOA was intended to provide a general sense of the FCRA notification requirement and so included by reference the counteroffer exception, except when otherwise inconsistent with the purposes of FCRA. While the Court does believe that FCRA should be interpreted broadly to protect consumer interests, no persuasive interpretations of the catchall provision have been cited which would make it applicable to a situation in which the ECOA counteroffer exception applies. *See also Harper v. Lindsay Chevrolet Oldsmobile, LLC*, 212 F. Supp. 2d 582, 591-92 (E.D. Va. 2002) (rejecting application of FCRA's "adverse action" definition in the context of an accepted counteroffer). This Court does not accept the borrowers' interpretation.[6] Though there are always some benefits to additional disclosures, the

---

[6]One case cited by borrowers, *Thomas v. Cendant Mortg.*, No. 03-1672, 2004 WL 2600772 (E.D. Pa. 2004), is not helpful to their cause. That case involved a *rejected* counteroffer and *dicta* in the case indicated some level of agreement with the decision in the *Harper*. *Id.* at *6-*7. Also, that decision depended on a disputed factual record.

instance of an accepted counteroffer is not an instance of "adverse action" requiring FCRA notification, at least on the facts of this case. As such, the Court finds that summary judgment is also warranted as to the FCRA claim. Therefore, all federal claims will be dismissed with prejudice.

**2. State Law Claims**

Title 28 U.S.C. § 1367(c)(3) authorizes the dismissal of supplemental state law claims, upon dismissal of federal law claims. This provision of law is intended to preserve comity between the state and federal courts, which is a traditional aspect of our federal system. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). Upon due consideration of the interests of the state courts in resolving state law controversies, the Court determines in its discretion that it should decline to exercise jurisdiction over the remaining state law claims. As such, those claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the reasons given, summary judgment shall be granted to Defendant as to all federal claims, and all state law claims will be dismissed because the Court declines to exercise jurisdiction over such claims.

Dated in Kalamazoo, MI:                     /s/Richard Alan Enslen
August 8, 2006                              Richard Alan Enslen
                                            Senior United States District Judge